180 So.2d 580 (1965)
William WELLS, Plaintiff and Appellee,
v.
Maxine Gary WELLS, Defendant and Appellant.
No. 1590.
Court of Appeal of Louisiana, Third Circuit.
November 30, 1965.
Downs & Gremillion, by Richard E. Lee, Alexandria, for defendant-appellant.
Gravel, Sheffield & D'Angelo, by A. M. D'Angelo, for plaintiff-appellee.
Before TATE, SAVOY and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a dispute between the mother and the father for custody of their 4 minor children. The mother seeks by rule to change a prior custody order in favor of the father. After a hearing on the merits, the district judge dismissed the rule and continued custody with the father. The mother, as plaintiff in the rule, appeals.
The general facts are as follows: Plaintiff and defendant were married in April of 1954. On about September 12, 1964, Mrs. Wells moved from the matrimonial domicile in Tioga, Louisiana, leaving her husband and 4 minor children, ages 9, 8, 6 and 3 years respectively. On September 24, 1964, Mr. Wells filed suit against his wife for separation from bed and board on the grounds of abandonment and for custody of the children. Mrs. Wells was personally served but made no defense. On November 23, 1964, a judgment was rendered by default in favor of Mr. Wells decreeing a separation from bed and board and awarding him custody of the children.
On April 2, 1965, Mrs. Wells filed the present rule to change the prior custody order. From a judgment on June 30, 1965 rejecting her demands, plaintiff has appealed.
*581 Mrs. Wells contends she did not contest the initial custody order because she was financially unable to employ a lawyer; that the evidence does not show she is unfit or unable to care for her children; and therefore she is entitled to the usual preference accorded the mother in custody disputes.
We will first discuss the law as to the burden of proof required of a party seeking to change a prior custody order. The leading case from our Supreme Court is Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955). The court there stated the general preference given the mother in initial custody proceedings does not apply where she is seeking to change a prior custody order. And, although a custody order is always subject to change "* * * when a change of conditions demands it, it is incumbent upon the party requesting the modification to prove that the conditions under which the children are living are detrimental to their interests and further that the applicant can and will provide a good home and better environment if given their custody."
In Decker the court found the mother had abandoned the children, had shown little interest in them thereafter, and had made very doubtful arrangements for their care if granted their custody. In concluding, the court said:
"Aside from our reluctance to upset a judgment of a trial court in divorce matters involving the custody of children, see Sampognaro v. Sampognaro, 215 La. 631, 41 So.2d 456, we have no hesitancy, under the facts of this case, in approving the conclusion of the court below that the environment and living conditions to which the children would be subjected by a change of custody `would not be conductive to their best interests'."
Following Decker v. Landry, supra, several Court of Appeal cases required the double burden of proof set forth there. Hanks v. Hanks, 138 So.2d 19 (1st Cir.1962) and Gentry v. Gentry, 136 So.2d 418 (1st Cir.1961), both affirmed trial court decisions that the mother, seeking to change a previous custody order in favor of the father, had failed to sustain her double burden of proof that (1) because of changed conditions she is now fit and able to provide for the children and (2) the father's care is detrimental to their interests.
The most recent case from this court on the subject is Gary v. Gary, 143 So.2d 411 (3rd Cir.1962; writ denied). We applied the "double burden" set out above from Decker v. Landry and reversed a decision of the trial court. Although 2 judges of this court dissented, the majority found the record did not support a finding of fact that the mother had sustained her double burden of proof.
A case apparently in conflict with this developing line of jurisprudence is Tullier v. Tullier, 140 So.2d 916 (La.App. 4th Cir. 1962). On a rule by the mother to change a prior custody order, the evidence showed that due to a change in financial circumstances the mother was able to provide adequately for the children. But she failed to show any circumstances of the father's care which were detrimental to the children's interests. Thus the only change shown was in the mother's circumstances, not the father's. Nevertheless, the court applied the presumption that the mother is best suited for the care of her children unless she is shown to be unfit or unable to provide for them and reversed a trial court decision in favor of the father.
However, a more recent case from the same Court of Appeal, Poitevent v. Poitevent, 152 So.2d 256 (4th Cir.1963; writ of certiorari refused) has followed Decker v. Landry, supra, and cited with approval Gentry v. Gentry, supra. In Poitevent the court said:
"There exists no doubt that an award of custody is always subject to modification; however, the applicant requesting a change or modification of a judgment *582 which awarded permanent custody to the mother or father, must prove that the environment in which the children are living is detrimental to their welfare and best interest. In addition, thereto, the applicant must show that he or she is able to provide a more suitable environment."
Under these authorities, we think the jurisprudence is now established that the mother seeking to change a prior custody order in favor of the father is not accorded the usual preference to which she is entitled in an initial custody proceedings. She has the double burden of proving not only that the conditions under which the children are living with their father are detrimental to their best interests, but also that she is fit and able to provide a good home and a better environment if given their custody.
With this understanding of the law in mind, let us review the particular facts of the present case. For some reason, which the record does not reveal, Mrs. Wells abandoned the family home, and her husband and 4 small children. She first moved to the home of her "girlfriend" in Tioga. After a week or so she went to stay with her mother at Darnell, in North Louisiana, and then, shortly thereafter, moved to Shreveport and secured employment at a truck stop. She was working there, and living in a room in the rear of the establishment, when she was served with the petition and citation in Mr. Wells's suit for separation and child custody. She says she did not contest Mr. Wells's suit because she was financially unable to employ an attorney and, being embarrassed to tell her parents of the separation, did not seek assistance from her father, who was able to help her. We agree with counsel for the appellee that the evidence does not show any good reason for Mrs. Wells's abandonment of the children or her failure to contest the initial custody proceedings.
At the time of the trial of the present rule, Mrs. Wells was living with her aunt, a Mrs. Harvey, at Logansport, Louisiana. Mrs. Harvey is 44 years of age and lives on a 12-acre farm with her 69 year old husband, a retired veteran with a coronary condition. Mrs. Wells's father and stepmother live nearby. These 3, i. e., Mrs. Wells, her father and her stepmother, work for Temple Industries at Pineland, Texas, a distance of 62 miles from Logansport. Mrs. Wells testified she earns $50 a week and plans to continue living with her aunt, who would care for the children during the day. Mrs. Wells would have to leave home at about 5 o'clock in the morning and would not return until about 5:30 p. m. each day. Other relevant facts are that Mrs. Harvey's farm is about 12½ miles from Logansport, where the nearest school is located, which the children could attend.
There is no showing that Mrs. Wells is morally, mentally or physically unfit for the custody of her children. But it is doubtful that a change to the circumstances under which she says she plans to provide for them would be to their best interests. Furthermore, even if we were to conclude that Mrs. Wells has sustained her first burden of proof, of showing a change in her own conditions that justifies a change of custody, she has utterly failed in her second burden of showing any conditions of the father's care which are detrimental to the children's interests.
Mr. Wells is employed in the body shop of Continental Trailways in Alexandria, where he has worked for 13 years. He owns his home in Tioga. The 3 older children attend school and the youngest, now 4 years of age, is left during the day with a babysitter. At the present time Mrs. Wells's mother is caring for the children during the day. Mr. Wells returns home from work each day at 4 o'clock and thereafter assumes the care of the children. The evidence shows the children are neatly dressed, well fed, happy and well cared for. There is no showing whatever of any *583 condition detrimental to their moral, mental or physical interests.
It is our conclusion that the mother has failed in her burden of proof. To fortify our decision, as our Supreme Court did in Decker v. Landry, supra, we add that in cases of this type we are most reluctant to upset a judgment of the trial court; and that the evidence here does not show the change to which the children would be subjected would be conducive to their best interests.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the appellant.
Affirmed.
TATE, J., assigns concurring reasons.
TATE, Judge (concurring).
The result is consistent with the decision of a majority of this court in Gary v. Gary, 143 So.2d 411. I therefore concur. However, I remain convinced that the dissenting views in Gary v. Gary stated for the dissenters by my brother HOOD are a better interpretation of the law as so far expressed by decisions of our Supreme Court.
As noted by the many Supreme Court decisions cited, "* * * the general rule is that the mother's right to custody of the children, especially when they are of tender age, is paramount to that of the father, and such right should not be denied unless she is morally unfit or otherwise unsuitable, and it is only in exceptional cases where it is to the greatest advantage of the children that their custody is entrusted to the father. [Citations omitted.]" Tullier v. Tullier, La.App. 4 Cir., 140 So.2d 916, 919.
In Decker v. Landry, 227 La. 603, 80 So. 2d 91, however, the Supreme Court held that this general rule does not apply in proceedings by the mother to change the permanent custody of the children previously awarded to the father. The mother is then required to prove that by reason of a change of conditions a change of the custody of the children to her will be beneficial to the children.
Decker v. Landry concerned an instance where the father's initial custody had been maintained as a result of a contradictory hearing. In the present case, however, the father received initial custody by confirmation of default, due to the mother's financial inability to hire a lawyer or to provide a home for the children during the time she and her husband were first separated.
Considering the well-settled principles that the welfare of the children is the primary aim of the courts and that a custody award is always subject to change in the interests of the children, it is extremely difficult for me to believe that the Supreme Court intended in Decker v. Landry to provide an inflexible and automatic rule making it virtually impossible for an impecunious mother to regain custody of her children if she is unable to afford a lawyer at the time their custody is initially the subject of a court judgment. The mother should have at least a real day in court before her favored right to the custody of the children (grounded on their best interests generally being served by the mother's rather than the father's custody) is held to have been forever waived. The Fourth Circuit held to this effect in Tullier v. Tullier, La.App. 4 Cir., 140 So.2d 916, and I do not note any overruling of or reference to this holding in its subsequent decision in Poitevent v. Poitevent, 152 So.2d 256 when it applied the rule of Gary v. Gary.
Admittedly, once by a truly contradictory hearing it has been shown that one parent or the other is best suited for the children's custody, not every change of circumstance should give rise to a change of custody. Stability of home life for the child is likewise an important value, and this I believe was the principle underlying the holding in Decker v. Landry. But such *584 a principle does not require us to erect an inflexible and arbitrary bar against a mother's right to the custody of her children under the general rule that such is to the children's best interest, when the initial judgment by default awarding custody to the father does not in fact represent a considered adjudication that this is one of the exceptional instances where the children's best interests are served by their father's rather than their mother's custody of them.
The writer is concurring primarily because these same dissenting views did not prevail in Gary v. Gary, which thus represents the considered majority view of what decisions should be followed by this court. However, the writer does not by concurrence intend to indicate agreement with the inflexible and arbitrary custody rule which our courts of appeal have been developing in instances such as the present, at least until our Supreme Court squarely approves such as a correct interpretation of its decisions.