CHASEZ, Judge.
This is a suit in which a mother seeks to regain custody and control of her two minor children, Michael Robert Holmes, age five and Annette Kay Holmes, age four.
By judgment of the Civil District Court for the Parish of Orleans, dated July 1, 1964, Robert Wilson Holmes was granted a divorce from his wife, Christine Roberts Holmes, on statutory grounds and was awarded the permanent care, custody and control of the children.
On May 10, 1967 the present action was brought by Christine Roberts, divorced wife of Robert Wilson Holmes and now the wife of Richard Lussier, demanding a change of custody of the children and, after a hearing on the merits, the District Court rendered a judgment awarding the custody and control of the children to Mrs. Lussier and ordered that Robert Wilson Holmes be condemned to pay alimony for the support of the children in the amount of $25.00 per week. The judgment also granted rights of visitation to Robert Wilson Holmes. This judgment is before this court on writ of certiorari and review which was granted on the application of Robert Wilson Holmes.
The court a qua did not render written reasons.
From the record before us, the facts may be succinctly stated as follows:
Robert Wilson Holmes was awarded the permanent care, custody and control of his children in June, 1964 and his children were cared for in the home of his parents and his sister, all of whom reside in the City of New Orleans.
In January of 1965 Holmes remarried, his second wife being Ruby F. Holmes, who had two children from a previous marriage. He lived in New Orleans with his family until May, 1965 when he was transferred to Lafayette, Louisiana by his employer and he resided there with his family for more than a year, when economic conditions constrained him to leave Lafayette. Burdened with past indebtedness, medical bills and insecure employment, Holmes found that temporarily he could not support his entire family; because of this unfortunate situation he and his wife decided that he would return with his children to his parents’ home in New Orleans and she would take up residence with her children at her parents’ home in Ville Platte.
While in New Orleans, Holmes’ parents and unmarried sister (who is a school teacher in the Public School System of New Orleans) assisted him in caring for the children. Holmes remained with the children until he found secure employment in Baton Rouge. In March, 1967 he became employed by the Humble Oil Company; his permanent employment was conditioned upon his successful completion of a ten-week training program, and while he was in Baton Rouge his parents and sister agreed to care for the children physically. Holmes completed his training program and his employment became permanent. He earned sufficient income to lease a home in which he and his family could be re¡united.
Christine Roberts has married twice since her divorce from Robert Wilson Holmes; She was granted a divorce from her second husband after a marriage lasting one year. She was married a third time to Richard Lussier, her present husband, in November, 1965. During this third marriage Christine Roberts Lussier has lived in New Orleans, Louisiana; St. Louis, Missouri and Tallahassee, Florida. Her husband worked for Chrysler Corporation in New Orleans, then transferred to St. Louis. They remained in St. Louis for three months, but his employment there did not prove satisfactory. Since November, 1966 they have lived in Tallahassee, Florida, where Mr. Lussier is now employed by E. Rose Printing Company.
The record discloses that Christine Roberts Lussier sought to have the original *899 custody award changed on two occasions prior to this suit. In March, 1966 she filed such a rule, which was continued indefinitely; and in July, 1966 she made another attempt to change custody. After a hearing on the merits, the District Judge refused her demand and dismissed her suit.
Whenever an award of custody is challenged, the court is concerned primarily with the resolution of the question in accordance with the best interest and welfare of the children.
The burden of proof incumbent on the party contesting a permanent custody award was set out by the Supreme Court in Decker v. Landry, 227 La. 603, 80 So.2d 91, 92.
“(1) At the outset, it is well to point out that the many cases cited by counsel for appellant in support of the contention that the mother is to be preferred in contests involving the custody of children have no application to the situation presented in the matter at hand. This is not a case wherein the parents of the children are initially contesting the right of one over the other to custody. Here, permanent custody has already been awarded to the father by the judgment of separation conformably with the provisions of Article 157 of the Civil Code. And, while that award is not irrevocable, see Pullen v. Pullen, 161 La. 721, 109 So. 400 and cases there cited, also Higginbotham v. Lofton, 183 La. 489, 164 So. 255, being subject to modification at any time when a change of conditions demands it, it is incumbent upon the party requesting the modification to prove that the conditions under which the children are living are detrimental to their interests and further that the applicant can and will provide a good home and better environment if given their custody.”
Adopting the basic rule in Gentry v. Gentry, La.App., 136 So.2d 418, 422 (1961), the court explained the extent of proof as follows:
“(7,8) The changes contemplated by law as justification for depriving a parent of custody previously granted by judicial decree, do not solely concern changes in the circumstances of the party seeking custody but equally (if not more important) changes attending conditions affecting the party to whom custody was initially granted. In such instances, the party requesting a change in custody must establish not only his or her ability to provide for the child but also show that because of material changes which have occurred since the initial decree the best interest and welfare of the child has been placed in jeopardy and, therefore, in the interest of the child’s welfare revision of the initial judgment is warranted.”
This court has generally applied the rule in Decker v. Landry, but has on one occasion modified its strict application where an award to the husband was considered temporary. In Tullier v. Tullier, La.App., 140 So.2d 916 (1962) the mother specially reserved her rights to challenge the temporary award to the father. Judge McBride, the organ of the court, held the strict application of the double burden of proof would be too harsh under the existing facts.
In Pickens v. Pickens, La.App., 186 So.2d 683; Writ Refused 249 La. 581, 187 So.2d 741, this court stated:
“(2) While an award of custody is subject to modification or change within the sound discretion of the trial judge, our jurisprudence has established the rule that a judgment awarding the permanent custody of children will not be changed unless the party seeking the change proves: (1) the conditions under which the children are living are detrimental to their best interest and welfare; and (2) that the applicant can and will provide a good home and better environment if awarded their custody. Decker v. Landry, supra; Pepiton v. Pepiton, supra [, 222 La. 784, 64 So.2d 3]; Wells v. Wells, La.App., 180 So.2d 580; Poitevent v. Poitevent, La. *900 App., 152 So.2d 256; Gary v. Gary, La.App., 143 So.2d 411; Hanks v. Hanks, La.App., 138 So.2d 19; Gentry v. Gentry, La.App., 136 So.2d 418.”
With respect to the present environment of the children, Mrs. Lussier argues that Robert Wilson Holmes has not fulfilled his custodial responsibilities in the best interest and welfare of these children. Her argument is based primarily on that period when the children remained in the home of their grandparents while Robert Wilson Holmes sought permanent employment in Baton Rouge. She contends that Robert Wilson Holmes’ temporary separation from his second wife has also contributed to a detrimental change in conditions.
As above stated, the record reveals that Robert Holmes met with financial difficulties during his second marriage which resulted in a temporary separation from his wife and her children. This separation was mutually agreed upon by them as the only available alternative which would allow the children a comfortable environment while Robert Wilson Holmes sought more secure employment. While the children remained in their grandparents’ home, there is no question that their every comfort and care was well attended to. Nor can we conclude that Robert Wilson Holmes avoided his parental responsibility towards these children. We are impressed with the fact that he arranged for the daily care of these children in the best manner available to him, and even while employed in Baton Rouge he returned to their home in New Orleans every week. Thus, his choice to allow the children to remain temporarily with the grandparents until he personally would be able to provide for the whole family appears to be in their best interest and welfare.
We were advised by counsel that at the time of trial Robert Wilson Holmes was able to reunite his family in Baton Rouge. Having completed the training course, he was then working steadily as an apprentice at .the Humble Refinery and had leased a three bedroom house in which to bring his family together again.
On the other hand, we do not agree that Christine Roberts Lussier can provide a better home and environment than the children have enjoyed with their father. The record reveals she has lived in several states and has been married twice since the divorce from Robert Wilson Holmes in 1964, and although much emphasis has been placed on the financial security of her present marriage, a simple examination of the evidence reveals that a large portion of Mr. Lussier’s income is absorbed by fixed monthly expenses. In fact, he stated he was two weeks in arrears in alimony payments to a former wife, “(b)ecause we didn’t have the money to send her at the time”. — P. 41, Testimony.
In order to care for these children properly, Lussier might be required to absorb not only their daily expenses, but the additional medical expenses necessitated by one child’s continual medical treatment. We suspect that this additional burden could not be easily coped with.
The record. discloses that Mrs. Lussier was properly deprived of the care, custody and control of these minor children by the judgment rendered in the divorce proceedings between her and Robert Wilson Holmes. There is no necessity for a discussion of this incident in this matter. We are, however, of the opinion that the court a qua was manifestly in error when it rendered its judgment granting Mrs. Lussier the permanent care, custody and control of these children because we are convinced that she has not borne the burden of proof incumbent upon her which is necessarily required to change the original judgment of the court. This court stated in Pickens v. Pickens, 186 So.2d 683, 685 Writ refused 249 La. 581, 187 So.2d 741, the following:
“ * * * Of primary importance is the best interest and welfare of the children and their need for a stable home life. This we feel is the basis for the rule; *901 changes in custody, other than changes necessitated by conditions which are detrimental to the best interest and welfare of the children, are almost certainly to be contrary to that best interest and welfare. We are of the opinion that the rule is applicable in the instant case.”
For the reasons hereinabove set forth, the judgment of the court a qua rendered and signed on the 13th day of July, 1967, awarding to Christine Roberts, first wife of Robert Wilson Holmes and now wife of Richard Lussier, the care, custody and control of the minor children, Michael Robert Holmes and Annette Kay Holmes, is reversed and set aside and her rule filed below is dismissed. All costs of this proceeding shall be borne by Christine Roberts Lussier.
Reversed and rendered.