BARON B. BOURG, Judge Pro Tern,
(dissenting).
While I have no quarrel with the findings of fact made by the trial judge, I nevertheless find that he committed serious error in his application of the law to the facts in this case. The law with reference to modification of custody awards is and has been that it is incumbent upon the party requesting a modification of a custody award to prove that the conditions under which the children are living are detrimental to their interest, and that the parties seeking the change can and will provide a good home and better environment, if given their custody. Pepiton v. Pepiton, 222 La. 784, 64 So.2d 3 (1953); Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955); Phillips v. Phillips, La.App., 244 So.2d 652 (1971), writ refused April 14, 1971; Pickens v. Pickens, La.App., 186 So.2d 683 (1966), writ refused June-20, 1966; Wells v. Wells, La.App., 180 So.2d 580 (1965).
It is also the law that the right of preference or superior right of the mother to have the custody of the children is only accorded in matters involving an initial or original award of custody and is not and should not be applied in a proceeding where the mother is initially or subsequently deprived of custody by reason of her unfitness and later seeks to modify or change the award. Griffith v. Roy, La.App., 256 So.2d 705 (1972). With the law in the posture stated above, Estes v. Estes, 261 La. 20, 258 So.2d 857 (1972) was decided by the Supreme Court. In the Estes case the mother obtained a judicial separation from her husband on the ground of abandonment in February of 1964 and the custody was maintained in her when a final divorce was granted the parties in May of 1965. In May of 1965, the mother and father filed a joint petition by which they secured an order amending the custody decree so as to give custody of the children to the father “until such time as (the Mother) can provide a proper home for the children”. The mother was unemployed and unable to provide for the children at the time. Thereafter, the mother regularly visited the children and the children visited with her at least one weekend per month. She was remarried on August 5, 1967 and filed a rule *59 to regain custody of her children in June of 1969, something less than two years later. Both the trial and appellate courts found that the homes of both parents were good, comfortable and moral, that the children were loved by both parents, and that each parent could provide a fine home for them. The trial court gave the custody of the children to the mother, and the court of appeal reversed on the ground that the mother’s delay in attempting to regain custody of the children forfeited any rights she had under the temporary custody agreement to regain the custody of the children. The court of appeal concluded that the mother in such circumstances “must bear the burden of proving that a change in custody is in the best interest of the children” and that she had failed to do since both homes were equally good. The Supreme Court reversed the court of appeal and reinstated the judgment of the trial court. In reversing, the Supreme Court made the following observation:
“The mother’s temporary inability to care for them due to economic distress did not transform her into an unworthy parent nor alter her custody as being in the ultimate best interest of these young children.
“It is true that stability in environment is an important value, so that a party seeking to change a considered determination of the permanent custody of children bears a heavy burden to justify such change as being in their best interest. Nevertheless, here, both parents and children realized at the time of the 1966 change of custody that it was temporary only.”
The majority cites the following from Estes v. Estes, supra:
“ * * * further, an appellate court must give great weight to the trial court’s considered determination of custody. If the trial court decides which parent should best have custody for the children’s sake after it has applied correct principles of law, a reviewing court should disturb such custody determination only where there is a clear abuse of the trial court’s discretion in the matter. * * * ” (Emphasis supplied)
I believe that the trial court failed to apply the correct principles of law. I believe that this case can clearly be distinguished from the Estes case by reason of the fact that the word “temporary” utilized in Estes refers to the agreement between the mother and father that the agreed upon change of custody to the father would be only for a temporary period, that is, until the mother was capable of again supporting and caring for her children. A further, and perhaps the major distinction between the Estes case and the instant case is the fact that in Estes at no time was there a determination that the mother was unfit, the change of custody from the mother to the father was accomplished voluntarily and purely on the basis of the fact that the mother was at that time unable to care for her children, and that she recognized this fact. In the instant case, after a hearing, there was a judicial determination of unfitness on the part of the mother. Certainly this distinction makes Estes totally inapplicable to the instant case.
The temporary custody that exists in this case is the temporary custody which is used synonymously with custody pendente lite. Counsel for appellee seeks to show this court that the so-called “double burden” imposed by Pepiton, and the other cases, applied only after there has been an award of permanent custody, and that it does not apply in the case of temporary custody.
Temporary custody and permanent custody are simply a semantical distinction between one and the same thing. Temporary custody is used, as stated above, as a synonym for custody pendente lite; permanent custody is employed to mean custody awarded in connection with a final judgment on the cause under consideration, be it a suit for separation or one for divorce between the parties. In truth and in fact,
*60 the law is to the effect that neither custody pendente lite nor custody awarded in connection with a final decree of divorce or separation are permanent. Each is subject to modification or change at any time, and it must necessarily be so, as the behavior of persons awarded custody, as well as that of persons denied custody of children does in fact change and does not remain constant.
In this particular case there was, albeit pendente lite, a full and complete hearing between the mother and the father for custody of the children conducted before the Judge of Division “F” of the court below, after which he awarded custody of the children to the husband. A short time later the Judge of Division “E”, in connection with trial of the adultery suit, went into the question of custody all over again and in effect said that because the original award had been one that was “temporary” or pendente lite and because the matter which he considered was “permanent” because it was being rendered in connection with a final judgment of divorce, the double burden imposed by Pepiton did not apply. He held, and the majority has affirmed his holding that Pepiton v. Pepiton, supra and Griffith v. Roy, supra apply only to an award of custody made in connection with the rendition of a final judgment of either separation or divorce.
I cannot agree with this conclusion. If either pendente lite or in connection with the final rendition of a judgment of divorce or separation there is a complete adversary proceeding between the parties whereat they both have an opportunity to be represented by counsel, and the matter is fully ventilated, I believe that at that point the burden imposed by Pepiton attaches and must thereafter be borne by the party denied and who thereafter seeks to regain custody. I believe also that the right or preference or superior right which the mother enjoys applies only to the initial or original award of custody, be it “temporary” or “permanent” and that it is not to be applied in any subsequent proceeding after the mother has once been deprived of custody by reason of her unfitness and where she later seeks to modify or change the award.
The essence, then, of this dissent is that I believe the law to be that once there has been a full and complete custody hearing, no matter in what stage of the proceeding it occurs, that thereafter the unsuccessful party seeking to amend or modify the judgment with reference to custody must bear the double burden imposed by Pepiton v. Pepiton, supra.
I therefore respectfully dissent.